UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYLE E. COX,

    Petitioner,

v.

                                      Case No. 2:24-cv-10676
                                      Hon. Brandy R. McMillion

ERIC RARDIN,

    Respondent.
_____/

**OPINION AND ORDER DENYING
THE PETITION FOR WRIT OF HABEAS CORPUS AND
GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Kyle E. Cox ("Cox") confined at the Federal Correctional Institution in Milan, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims that the Bureau of Prisons ("BOP") has incorrectly calculated his projected prerelease placement date under the First Step Act ("FSA"). Specifically, Cox argues that BOP's own Program Statement 5410.01 requires it to consider and award any potential, future First Step Act Credits ("FTCs") that he could earn while in prerelease custody when calculating his projected prerelease placement date at the beginning of his sentence, and that the BOP did not do so. *See generally* ECF No. 1. According to Cox, had the BOP correctly applied these credits, it would "yield a prerelease placement date that has

1

already passed." *Id.* at PageID.3-4. BOP filed an answer to the petition (ECF No. 7) and Cox filed a reply (ECF No. 8).

On September 12, 2024, Cox requested leave to supplement his habeas petition with "the most current update of [his] FSA Time Credit Assessment Sheet" which he received on September 3, 2024. *See* ECF No. 9. The updated FSA Time Credit Assessment Sheet calculated Cox's prerelease placement date to be June 2, 2024. *Id.* Thus, Cox claims he is eligible to be released immediately to prerelease custody. *See id.* This Court granted his request for leave to file an amended habeas petition. ECF No. 10. BOP filed a supplemental answer and Cox filed a reply. ECF Nos. 11, 12.

For the reasons stated below, the petition for writ of habeas corpus is **DENIED**.

## I.

Cox was convicted in the United States District Court for the Southern District of Indiana for coercion and enticement of a minor under 18 U.S.C. § 2422(b). He was sentenced to 168 months in prison on July 29, 2016, with his full term of incarceration expiring on September 5, 2030. ECF No. 1, PageID.11; ECF No. 7, PageID.130. As a federal inmate whose conviction does not exclude him from receiving FSA benefits, Cox may earn FTCs to reduce both his period and placement of incarceration. The crux of the parties' dispute is whether the BOP correctly

2

calculated and applied Cox's FTCs and, relatedly, whether correct calculation would entitle Cox to immediate transfer to prerelease custody.

**Earning and Applying First Step Act Credits**

Under the First Step Act, an eligible federal prisoner can earn 10 FTCs "for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). An additional 5 FTCs can be earned during those 30 days if (1) his or her recidivism-risk rating is minimum or low and (2) his or her risk of recidivism has not increased for two consecutive recidivism assessments by the BOP. 18 U.S.C. § 3632(d)(4)(A)(ii); *see also* 28 C.F.R. § 523.42(c)(2). The number of days an inmate is incarcerated does not necessarily generate a proportional number of earned FTCs. An inmate who refuses programming, or has programming interrupted for various reasons, is not "successfully participating" and will not earn FTCs during those periods. *See, e.g.*, *Allegra v. Hemingway*, No. 22-CV-11143-TGB-APP, 2021 WL 6063607, *5 (E.D. Mich. Dec. 22, 2021). Credits are only earned by ***actual completion or participation*** in anti-recidivism programming, ***not the speculative participation*** in future programming. 18 U.S.C. § 3632(d)(4)(A) (emphasis added). Moreover, an inmate can lose FTCs for violating the requirements and rules of programs or as a sanction for a prohibited act. 28 C.F.R. § 523.43(a).

Earned FTCs are applied toward an inmate's early transfer to prerelease custody and/or supervised release. 18 U.S.C. § 3632(d)(4)(C); *see also Allegra*, 2021 WL 6063607, at *5. The first, and a maximum of, 365 days of FTCs are applied towards a prisoner's early transfer to supervised release, effectively shortening their sentence by up to one year. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d); *see also* ECF No. 7-1, PageID.137 ("[A] maximum of 365 days of credits may be applied towards an inmate's early transfer to supervised release . . . any *remaining credits* [are] applied towards early transfer to prerelease custody.") (emphasis added). Any additional earned FTCs are applied towards early transfer to prerelease custody, either in a residential reentry center or home confinement.[1] 28 C.F.R. § 523.44(c). In either case, certain requirements must be met before earned FTCs can be applied toward an inmate's sentence. For earned FTCs to be applied to a sentence, an eligible inmate must have: (1) earned FTCs in an amount equal to his remaining term of imprisonment, (2) shown through periodic risk assessments a demonstrated reduction in recidivism risk or maintained a low or minimum risk during his incarceration, and (3) had the remainder of his term computed under applicable law. 18 U.S.C. § 3624(g)(1); 28 C.F.R. §§ 523.44(b)-(d).

---

[1] The date of referral to prerelease custody can also be affected by the number of days granted under the Second Chance Act. ECF No. 7-1, PageID.168.

As emphasized in the BOP's Program Statement 5410.01, "FTC[s] will not be applied towards an inmate's release date unless earned."  ECF No. 7-1, PageID.168.

**The BOP's Projected Release Date Calculation**

The BOP makes projections of a federal inmate's release date, to both prerelease custody and supervised release, based upon the maximum potential FTCs that inmate could earn during their sentence.  ECF No. 7-1, PageID.168 (citing Program Statement 5410.01: "the [BOP] will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence.").  Relevant to Cox's petition, Program Statement 5410.01 indicates that the PRD is calculated "assuming that an inmate will remain in earning status throughout his or her sentence, *including while in prerelease custody*."  *Id.* at PageID.169 (emphasis added).  However, the Court notes that PRD is "conditional" and per the policy is subject to change if, for example, "the inmate enters non-earning status." *Id.*  In other words, the PRD is not a set, immutable date of release because it does not discharge an inmate's obligations to both actually earn the FTCs that the PRD is based upon and satisfy the other statutory requirements for FTC application.  18 U.S.C. § 3624(g)(1).

5

**Competing Calculations of Cox's Release Dates**

By the time that the BOP filed their response to Cox's habeas petition, Cox had earned 945 FTCs. ECF No. 7, PageID.125. This, according to the BOP, yielded a conditional PRD to prerelease custody of January 8, 2026 and a projected early transfer to supervised release date of August 11, 2027. *Id.* at PageID.125-126. Cox disagrees with this calculation and argues that a correct calculation and allocation of FTCs would lead to 1725 FTCs and a PRD of November 20, 2022—a date that had already passed by the time he filed his habeas petition in 2024. *See* ECF No. 1, PageID.16, 20.[2]

On September 3, 2024, before this Court had an opportunity to rule on the habeas petition, Cox received an updated FSA Time Credit Assessment Sheet from the BOP that included "a new 'Planning' section" and a new "FSA Conditional Placement Date." *See* ECF No. 9, PageID.192-193. Per the new section, the BOP had calculated Cox's PRD to be June 2, 2024—another date that had already passed—ostensibly based on an award of 1165 "FSA Conditional Placement Days." ECF No. 9, PageID.193, 196. In its response, the BOP explained that this date was incorrect due to a calculation error it discovered in the new Planning section. ECF

---

[2] Both Cox's and the BOP's calculated prerelease custody release dates account for an additional 365 days from the Second Chance Act. ECF No. 1, PageID.17; ECF No. 11-2, PageID.206; *see also* ECF No. 12, PageID.213, 217 (describing the 365 days as "[d]efault SCA conditional placement days" that "require[] a five-factor review[.]").

6

No. 11, PageID.200.  Upon discovering this error, BOP directed prison staff "not to use the planning section until further guidance was received" and that "[i]n the meantime, a manual calculation should be used." *Id.* at PageID.203.  That manual calculation in Cox's case, which accounted for the additional FTCs Cox had earned since the BOP responded to the original habeas petition, generated a conditional prerelease custody placement date of November 10, 2025.  *Id.*; *see also id.* at PageID.202.  Cox in his Supplemental Reply claims that BOP provided him a new conditional placement date of June 27, 2025, to reflect that he has, as of October 12, 2024, earned 1165 FTCs.  ECF No. 12, PageID.217.

In each of the filings, the crux of the dispute is whether proper calculation and application of Cox's FTCs includes counting future, unearned FTCs.  *See generally* ECFs No. 1, 7, 8, 9, 11, 12.

## II.

A petition for writ of habeas corpus filed by a federal inmate under 28 U.S.C. § 2241 is proper where the inmate is challenging the manner in which their sentence is being executed.  *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998).  This includes when an inmate alleges improper calculation of FTCs.  *See Hernandez v. Lamanna*, 16 Fed. App'x 317, 320 (6th Cir. 2001) (Section 2241 "is reserved for challenges to the execution of a sentence, such as the computation of parole or

7

sentence credits"). Thus, the Court finds Cox's current application is properly brought under § 2241.

### III.

Cox argues that the BOP is violating its own policies, as expressed in Program Statement 5410.01, by failing to award him credits that he could earn while in prerelease custody, in the future, in order to determine his earliest prerelease placement date. *See generally* ECF Nos. 1, 8, 9, 12. The Court disagrees with Cox's assessment.

First, to the extent that Cox's habeas claim relies solely on the fact that BOP has violated its own policies, he is not entitled to habeas relief. "A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011); *see also Ogunlana v. Hemingway,* No. 2:21-CV-13060, 2022 WL 4359546 (E.D. Mich. Sept. 20, 2022) (same) (citing *Reeb*, 636 F.3d at 1227); *Dalke v. Terris*, No. 16-CV-11165, 2017 WL 1315717, at *4 (E.D. Mich. Apr. 10, 2017) (same) (citing *Reeb*, 636 F.3d at 1227). The BOP's Program Statements are "merely internal interpretive rules . . . and do not create enforceable rights or obligations." *Mohamed v. Streeval*, No. CV 0: 19-32-HRW, 2019 WL 2163592, at *3 (E.D. Ky. May 17, 2019) (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)). Therefore, the Court finds that Cox's claim

that the BOP failed to comply with Program Statement 5410.01 does not provide a basis for habeas corpus relief. *See, e.g.*, *Young v. Eischen*, No. 23-CV-3227 (PJS/JFD), 2024 WL 418702, at * 2 (D. Minn. Jan. 3, 2024), *report and recommendation adopted*, No. 23-CV-3227 (PJS/JFD), 2024 WL 416445 (D. Minn. Feb. 5, 2024).

Second, Cox has not demonstrated that BOP is in violation of either its Program Statement 5410.01 or other applicable federal law. The Court will first briefly summarize Cox's position.

Cox's argument seems to hinge on the commonsense idea that earned FTCs should not be "rendered essentially useless" by BOP policy. ECF No. 1, PageID.13. His argument begins by asserting that "inmates [can] continue to earn FTCs until transferred to supervised release," even while confined at a residential reentry center or on home confinement in prerelease status. ECF No. 1, PageID.14. He finds support for this assertion from BOP's commentary to the final rule codifying the BOP's procedures regarding the FSA:

> After carefully considering the comments received, the Bureau agrees that inmates in prerelease custody—whether in a residential reentry center (RRC) or on home confinement—are eligible to earn FSA Time Credits under 18 U.S.C. 3632(d)(4)(A) . . ."

FSA Time Credits, 87 Fed. Reg. 2705, 2712 (Jan. 19, 2022). As well as from BOP's own Program Statement 5410.01, which includes:

9

> [T]he Bureau will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence . . .
>
> [T]he Bureau will calculate an inmate's PRD by assuming that an inmate will remain in earning status throughout his or her sentence, *including while in prerelease custody*."

ECF No. 7-1, PageID.168-169 (emphasis added).[3]

However, Cox argues, because BOP allocates the first 365 FTCs toward supervised release and applies the remaining FTCs only when an inmate has "earned time credits . . . in an amount that is equal to the remainder of [their] imposed term of imprisonment," the FTCs earned in prerelease custody "have no value." ECF No. 1, PageID.13, 17-18, 21. Put simply, Cox argues that BOP will not transfer an inmate to prerelease custody until that inmate has earned sufficient credits, and to have sufficient credits necessarily includes having already earned the maximum 365 FTCs applicable to supervised release. And even though credits can continue to be earned while in prerelease custody, there is nothing to apply those earned FTCs toward. While this may be true, the Court finds this application supported by statute.

---

[3] Cox also finds support in the Annual Report issued in April 2023 by the U.S. Attorney General: "the [Program Statement 5410.01] clarified that time credit could continue to be earned in community placements (i.e., home confinement or RRC). Individuals will be able to continue earning credit while in the community, so long as they continue to successfully comply with all the rules and procedures of prerelease custody." ECF No. 1, PageID.15; *see also* U.S. Dep't of Justice, Office of the Attorney General, *First Step Act Annual Report*, p. 18 (April 2023), https://www.ojp.gov/first-step-act-annual-report-april-2023.

*See* 18 U.S.C. § 3632 (explaining that FTCs can only be "applied toward time in prerelease custody or supervised release.").

An illustrative example, as the Court understands it, might be helpful: Say an inmate is serving a 6 year sentence. And, as explained above, they can earn up to 15 FTCs every 30 days; or 6 months of FTCs every year. After their first 2 years, assuming they have actually earned all the credits they potentially could, they will have accumulated 1 year of FTCs. By BOP policy, that first year will be allocated toward transfer to supervised release. ECF No. 7-1, PageID.149, 167 ("Pre-release placement . . . will be based on FTCs other than those credits already applied to early transfer for supervised release."); *see also id.* at PageID.137. After 3 years, they will have earned 1.5 years of FTCs—but they cannot yet transfer to prerelease custody because they still have 3 years remaining on their sentence (per 18 U.S.C. § 3624(g)(1)(A)) and $1.5 \neq 3$. It is only after 4 years of earning FTCs will the inmate be eligible to have their FTCs applied toward transfer to prerelease custody because at year 4, they will have earned 2 years of FTCs and there will be 2 years remaining on their sentence. But when they are transferred to prerelease custody at year 4, they will have already earned the 1 year toward supervised release. So, for the year they are earning credits in prerelease custody, there is nothing more to apply them toward.

Based on this application, Cox argues that "[a]pplying the credits in the manner BOP has chosen to adopt makes no sense. Why calculate a total number of

11

potentially earned credits, only to then explain to inmates that those credits mean nothing . . ." ECF No. 1, PageID.25. This leads Cox to conclude that "the intention [of BOP's policy] is to calculate <u>and award</u> FTCs at the initial stages of the individual's sentence to ensure that all FTCs earned will have applicability." ECF No. 1, PageID.21 (emphasis in original). And according to Cox, that it is earning status, whether presently or in the future, that should be "the only criteria that matters" for calculating and applying an inmate's FTCs. ECF No. 1, PageID.18. As the Court understands it, Cox argues that BOP's Program Statement 5410.01 implies the conclusion that credits that *could* be earned while in prerelease custody must be immediately applied toward transfer to prerelease custody, even if not yet earned. And as a result, Cox argues BOP has violated Program Statement 5410.01 by not applying his future to-be-earned credits toward his transfer to prerelease custody.

While Cox's arguments are not entirely illogical,[4] they are ultimately futile. Regardless of whether Cox reads BOP's Program Statement 5410.01 as unwise and unimplementable policy if not for his conclusion, he has failed to show that BOP's calculations of his conditional PRDs do not follow Program Statement 5410.01. *See* ECF Nos. 1, 8, 9, 12; *see also, e.g.*, ECF No. 7, PageID.130-131 (including future,

---

[4] Even the BOP at one point seemed to contemplate credits earned in prerelease custody would have some future value. *See* 87 Fed. Reg. [("[T]he Bureau agrees that inmates in prerelease custody . . . are eligible to earn FSA Time Credits under 18 U.S.C. 3632(d)(4)(A)—which they could presumably apply, under 18 U.S.C. 3632(d)(4)(C), toward transfer to supervised release.").

potential FTCs in his projected prerelease placement date).  More importantly, Cox has not shown that BOP violated the FSA by refusing to apply unearned FTCs or that it improperly applied FTCs in his case.

In fact, the statute makes clear that only *earned* FTCs can be applied.  *See* 18 U.S.C. § 3632(d)(4)(C).  And this makes sense: the BOP cannot rely on its projection of future earned credits when applying FTCs because there is no guarantee that an inmate will actually earn those credits.  *See* ECF No. 7, PageID.131 ("because FTCs may be lost due to discipline, due to earning rates being interrupted or reduced, or due to an inmate's failure to meet the requirements for FTCs to be applied, the BOP is not authorized to apply future potential unearned FTCs to an inmate's sentence computation.").[5]  Moreover, the FSA makes clear that merely earning sufficient FTCs is not enough; an inmate must still meet the additional statutory requirements before those FTCs can be applied for transfer.  18 U.S.C. § 3624(g) (including the requirement that an inmate "has earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment").  Even if BOP

---

[5] The Court also notes that inmates have no federal constitutional right to earn or receive sentencing credits.  *See Moore v. Hofbauer*, 144 F. Supp. 2d 877, 882 (E.D. Mich. 2001)(citing *Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992)).  Nor does a federal prisoner have a constitutionally protected liberty interest in earning future sentence credits.  *See Sotherland v. Myers*, 41 F. App'x 752, 753 (6th Cir. 2002).

policy leads to an inmate earning FTCs in prerelease custody that will never amount to any benefit,[6] the BOP is still bound by statute when applying them.

Here, Cox has not earned FTCs in an amount equal to the time remaining on his sentence. ECF No. 7-1, PageID.139; ECF No. 12, PageID.217. By statute, this means Cox is not eligible to have his FTCs applied toward transfer to prerelease custody. *See* 18 U.S.C. § 3624(g). While the Court is skeptical that BOP's PRD calculation methods are yielding correct, realistic release dates, Cox has not demonstrated that BOP has incorrectly *applied* his earned FTCs here.

The Court therefore finds that the BOP did not improperly calculate or apply Cox's FTCs by not applying potentially earned FTCs instead of actually earned FTCs. Further, the Court finds because Cox has not yet earned sufficient FTCs to be applied toward transfer to prerelease custody, the BOP did not err by refusing to transfer Cox to prerelease custody.

---

[6] Although the BOP never addresses Cox's arguments on this point, *see generally* ECF Nos. 7, 11, the Court infers at least one possible use for FTCs earned in prerelease custody: to replace FTCs that are lost while in prerelease custody to prevent being returned to prison. *See* ECF No. 7-1, PageID.169. Further, the Court need not defer to BOP's interpretation of the FSA that inmates can earn FTCs while in prerelease custody. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

## IV.

Accordingly, the Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2241 is **DENIED WITH PREJUDICE.** Because a certificate of appealability is not needed to appeal the denial of a habeas petition filed under § 2241, *Witham v. United States,* 355 F.3d 501, 504 (6th Cir. 2004), Petitioner need not apply for one with this Court or with the Sixth Circuit before filing an appeal from the denial of his habeas petition.

As noted, the Court does not believe that Cox's arguments are totally illogical, they simply do not comport with current law. The Court therefore will grant Petitioner leave to appeal *in forma pauperis* because any appeal would be taken in good faith. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

**IT IS SO ORDERED.**

Dated: February 13, 2025        s/Brandy R. McMillion
                                Hon. Brandy R. McMillion
                                United States District Judge